IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC.; THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, INC., CONWAY BRANCH; CLAYTON BROWN; JERMAINE BROWN; and KRIS BRYANT,<br><br>       Plaintiffs,<br><br>v.<br><br>LEFTIS FOODS, INC., d/b/a PAN AMERICAN PANCAKE & OMELET HOUSE,<br><br>       Defendants. | Civil Action No.: 4:11-CV-01295-RBH<br><br><br><br><br><br><br><br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE COUNTERCLAIM** |

## INTRODUCTION

The National Association for the Advancement of Colored People, Inc. ("NAACP"), the NAACP's Conway Branch, Clayton Brown, Jermaine Brown, and Kris Bryant (collectively, "Plaintiffs") hereby file this memorandum in support of their motion to dismiss the Counterclaim filed on July 14, 2011 by Leftis Foods, Inc. and Pan American Pancake & Omelet House (collectively, "Pan American").

Plaintiffs brought this lawsuit as part of a continuing effort to stamp out racially discriminatory practices in the Myrtle Beach, South Carolina area during Black Bike Week. During Black Bike Week 2010, Pan American refused to serve Messrs. Brown, Brown, and Bryant during regular business hours because of their race. To remedy Pan American's discriminatory conduct, Plaintiffs filed this lawsuit to obtain declaratory, injunctive, and

monetary relief. In response to Plaintiffs' claims, Pan American filed a counterclaim asserting that Plaintiffs abused the process of this Court merely by filing and maintaining this lawsuit.

For two reasons, Pan American's conclusory allegations fail to state an abuse-of-process claim. First, Pan American does not allege that Plaintiffs used "a legal procedure for a purpose not intended by the procedure." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 567 S.E. 2d 251, 253 (S.C. Ct. App. 2002). Pan American claims Plaintiffs abused the judicial process simply by refusing to dismiss this lawsuit. However, under South Carolina law, "'[t]he mere use of the legal process does not constitute abuse of process.'" *Id.* at 255 (internal punctuation omitted). South Carolina courts routinely dismiss abuse-of-process claims where, as here, a party "fail[ed] to assert how the process was perverted or abused." *Id.* at 255. Second, Pan American fails to allege sufficient facts showing that Plaintiffs filed this lawsuit for any other purpose besides the "purpose of remedying alleged wrongs." *Id.* at 256. For either reason, this Court should dismiss Pan American's counterclaim.

## BACKGROUND

### A.     The Parties

The NAACP is dedicated to eliminating race-based discrimination and to ensuring the political, educational, social, and economic equality rights of all persons. The NAACP's Conway Branch is an unincorporated unit of the NAACP that operates in the region including and surrounding Conway, South Carolina. (Compl., ¶ 12.) The cities of Atlantic Beach, Myrtle Beach, and North Myrtle Beach are within the region in which the Conway Branch operates. (*Id.*)

Defendant Leftis Foods, Inc. owns and operates Pan American Pancake & Omelet House, a Myrtle Beach restaurant. (*Id.*, ¶ 17.)

Plaintiffs Clayton Brown, Jermaine Brown, and Kris Bryant reside in North Carolina. (*Id.*, ¶¶ 14-16.) This lawsuit arises out of Pan American's refusal to serve Messrs. Brown, Brown, and Bryant because they are African-American. (*See, e.g.*, *id.*, ¶ 51.)

### B.     Plaintiffs' Complaint

Established in 1980, Black Bike Week (alternatively known as Atlantic Beach Bikefest) is an annual motorcycle rally held during Memorial Day weekend in the cities of Atlantic Beach, Myrtle Beach, and North Myrtle Beach. (Compl., ¶¶ 24-26.) The attendees at this rally are almost exclusively African-American. (*Id.*, ¶ 24.) Black Bike Week is the only time of year during which the majority of tourists to the Myrtle Beach area are African-American. (*Id.*, ¶ 27.)

As Black Bike Week grew in size and popularity, Myrtle Beach-area government leaders and private businesses began implementing racially discriminatory practices designed to prevent African-Americans from visiting the area. (*Id.*, ¶¶ 28-39.) In response, the NAACP and its Conway Branch have monitored and investigated the treatment of African-Americans during Black Bike Week. (*Id.*, ¶ 60.) The NAACP's monitoring and investigation efforts have included the use of observations, interviews, intake, and other investigative methods. (*Id.*) As a result of these monitoring efforts, the NAACP has successfully challenged racially discriminatory practices implemented during Black Bike Week by the city of Myrtle Beach and numerous hotels, motels, and restaurants.

This action – the latest in the NAACP's effort to eradicate racially discriminatory practices during Black Bike Week – arose when two Pan American employees refused to serve Messrs. Brown, Brown, and Bryant because of their race. (*See, e.g.*, *id.*, ¶ 45.) On May 30, 2011, Messrs. Brown, Brown, and Bryant attempted to dine at Pan American during its regular business hours. (*Id.*, ¶ 46.) Immediately upon entering, two white Pan American employees told

them – without explanation – that the restaurant was closed.  (*See id.*)  At that time, Pan American was serving food and beverages to numerous white individuals, who appeared to have been recently seated.  (*Id.*, ¶ 47.)  Shortly after Messrs. Brown, Brown, and Bryant walked out of the restaurant, they saw a white individual enter Pan American.  (*Id.*, ¶ 48.)  The same two employees – who moments before had refused to serve Messrs. Brown, Brown and Bryant – seated this white individual, gave him a menu, and poured him coffee.  (*Id.*, ¶ 49.)

Based on these events, Plaintiffs filed a Complaint seeking declaratory and injunctive relief and compensatory and punitive damages as a result of Pan American's violations of federal and South Carolina civil rights laws.  In its Answer to Plaintiffs' Complaint, Pan American admitted that:

- it seated and served white individuals immediately before and after refusing to serve Messrs. Brown, Brown, and Bryant (*see* Ans. & Countercl., ¶¶ 23, 25, 27-28), and

- it has "limited knowledge of all of the conduct of its employees" and does not "personally know what exactly took place." (*Id.*, ¶ 18.)

Pan American nonetheless speculates that it made an *ad hoc* decision to close for a "brief period of time" for a shift change at the precise moment that three African-American individuals attempted to dine at the restaurant.  (*Id.*, ¶ 25.)

### C. Pan American's Counterclaim

Pan American filed an abuse-of-process counterclaim against Plaintiffs (the "Counterclaim") along with its Answer.  (Ans. & Countercl., ¶¶ 47-49.)  Pan American alleges that Plaintiffs abused this Court's process because Plaintiffs refused to dismiss this lawsuit.  (*See id.*, ¶ 48.)  Pan American's Counterclaim relies exclusively upon conclusory allegations of improper conduct.  For example, although Pan American generally contends that it "has been singled out for an improper purpose" and that Plaintiffs initiated this lawsuit "with an ulterior

motive" (*id.*), Pan American does not identify a single improper purpose or ulterior motive. Similarly, Pan American does not provide any examples of how Plaintiffs used this Court's process or procedures in a manner inconsistent with the ordinary course of litigation.

## STANDARD OF REVIEW

For a counterclaim to survive a Rule 12(b)(6) motion to dismiss, its "'factual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, a counterclaim may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim for relief. *Id.* at 1949. In reviewing the allegations in a counterclaim, courts are not required to "accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted); *see also Tibbets v. Yale Corp.*, 47 F. App'x 648, 654 (4th Cir. 2002) (affirming dismissal of abuse-of-process claim).

## ARGUMENT

To state an abuse-of-process claim, Pan American must allege both (1) "a willful act in the use of the process not proper in the conduct of the proceeding" and (2) "an ulterior purpose." *Hainer v. Am. Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997). Pan American does neither. First, "'[t]he mere use of the legal process does not constitute abuse of process,'" and Pan American failed to identify how Plaintiffs have improperly used this Court's process. *Food*

*Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 567 S.E. 2d 251, 255 (S.C. Ct. App. 2002) (quoting *Kirchner v. Greene*, 691 N.E.2d, 107, 116-117 (Ill. Ct. App. 1998)). Second, Pan American fails to allege the "ulterior purpose" behind Plaintiffs' lawsuit as required by South Carolina law. Nor could Pan American responsibly make such allegations because Plaintiffs filed this lawsuit for the "purpose of remedying alleged wrongs." *Food Lion*, 567 S.E.2d at 256. Either defect provides an independent reason to dismiss the Counterclaim.

## I.      PAN AMERICAN FAILED TO ALLEGE THAT PLAINTIFFS HAVE ENGAGED IN ANY IMPROPER ACTS DURING THIS LITIGATION.

The Counterclaim's first flaw is that Pan American fails to allege facts showing Plaintiffs engaged in "a willful act not proper in the regular course of the proceeding." *Hainer*, 492 S.E.2d at 107.

Under South Carolina law, courts have recognized that "'[t]he mere use of the legal process does not constitute abuse of process.'" *Food Lion*, 567 S.E.2d at 255 (quoting *Kirchner*, 691 N.E.2d at 116-117). In other words, "[a] complaint which neglects to allege a perversion or misuse of the process by omitting facts necessary to show an *improper* willful act in the use of the process has not stated a cause of action for abuse of process and fails as a matter of law." *Food Lion*, 567 S.E.2d at 257 (emphasis in original).

Pan American premises its abuse-of-process claim exclusively upon Plaintiffs' decision to file and maintain a lawsuit. That is insufficient as a matter of law. In *Food Lion*, the appellate court held that "a party who simply pursues a lawsuit with a collateral purpose in mind has done nothing improper." 567 S.E.2d at 256. In that case, the plaintiff alleged the defendant had abused the court's process by filing and amending a complaint, taking discovery, and engaging in motions practice. *Id.* at 254. As here, there was no allegation that any of those actions constituted a "perversion of a legal procedure for a purpose not intended by the

procedure." *Id.* at 253, 255-57.  Because "there is no action for abuse of process when the process is used for the purpose for which it is intended," the *Food Lion* court dismissed the abuse-of-process claim.  *Id.* at 256.

Similarly, the only purportedly improper act that Pan American cites in its Counterclaim is Plaintiffs' unwillingness to dismiss their lawsuit alleging race discrimination.  (*See* Ans. & Countercl., ¶ 47.)  This is not "a willful act not proper in the regular course of the proceeding."  *Hainer*, 492 S.E.2d at 107; *see also S. Glass & Plastics Co. v. Duke*, 626 S.E.2d 19, 24 (S.C. Ct. App. 2005) (rejecting abuse-of-process claim challenging damages-seeking lawsuit when there was "no evidence [a party] engaged in any improper acts during the course of the proceeding"); *Scott v. McCain*, 274 S.E. 2d 299, 301 (S.C. 1981) (dismissing abuse-of-process counterclaim when "[t]here is no indication that wayward acts have taken place whereby collateral advantage is sought").  Numerous federal courts have similarly concluded that an abuse-of-process claim must allege "that the offending party did something more than simply file and maintain a lawsuit."  *OptiStreams, Inc. v. Gahan*, No. 05-0117, 2006 WL 829113, at *3 (E.D. Cal. 2006); *Crenshaw v. Antokol*, No. 04-cv-182, 2005 WL 6088857, at *8 (N.D. Ind. Mar. 29, 2005) (abuse-of-process claim must allege party "used legal process in a way that was not proper in the normal prosecution of the case"); *Riddell Sports, Inc. v. Brooks*, 872 F. Supp. 73, 79 (S.D.N.Y. 1995) ("The mere filing of a complaint does not give rise to a claim for abuse of process, and neither does encouraging others to institute a lawsuit . . . .").

Nor can Pan American premise an abuse-of-process claim upon Plaintiffs' decision to maintain what Pan American contends is a meritless lawsuit.  Refusal to accept Pan American's self-serving justification for its employees' conduct is not abuse of process.  Moreover, even if a factfinder ultimately agreed that Plaintiffs' claim was without merit, that

would not give rise to an abuse-of-process claim, because an abuse-of-process claim focuses "on the nature of the use of process and the [party's] motivation, not on the merits of the underlying claim made by way of that process." *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). For these reasons, numerous courts have held that parties are not liable for abuse of process even after filing and maintaining an unsuccessful lawsuit. *See, e.g.*, *Moore v. Rural Health Srvs., Inc.*, No. 04-376, 2007 WL 666796, at *5 (D.S.C. Feb. 27, 2007) (Harwell, J.) (affirming magistrate's decision to enter judgment on abuse-of-process counterclaim even though party filed meritless action); *Microsoft Corp. v. BEC Computer Co., Inc.*, 818 F. Supp. 1313, 1318-19 (C.D. Cal. 1992) (meritless lawsuits could not support abuse-of-process claim).

Though no factual determinations are required to dismiss the counterclaim, the plethora of admissions in Pan American's Answer further undermines Pan American's abuse-of-process claim. While Pan American claims race played no factor in its decision to "briefly close" at the precise moment that three African-Americans men attempted to obtain service, Pan American admits that it may have seated and served white individuals immediately before and after it refused to serve Messrs. Brown, Brown and Bryant. (*See* Ans. & Countercl., ¶¶ 23, 27-28.) Pan American also acknowledges that it is in no position to challenge Messrs. Brown, Brown, and Bryant's version of events: it admits to having "limited knowledge of all of the conduct of all of its employees" and that it does not "personally know exactly what took place" when Messrs. Brown, Brown, and Bryant were refused service. (*Id.*, ¶ 18.) Discovery will reveal whether Pan American's explanation is pretext for race discrimination, but its admissions only confirm that Plaintiffs are well within their rights to maintain this action.

In short, Pan American fails to allege that Plaintiffs "engaged in any improper acts during the course of the proceeding." *S. Glass & Plastics Co.*, 626 S.E.2d at 24. Where, as

here, a party "fail[ed] to assert how the process was perverted or abused," dismissal is proper. *Food Lion*, 567 S.E.2d at 255.

## II.     PAN AMERICAN FAILED TO ALLEGE THAT PLAINTIFFS FILED THIS LAWSUIT WITH AN ULTERIOR PURPOSE.

Pan American also fails to state an abuse-of-process claim because the Counterclaim does not specify the "ulterior purpose" that allegedly motivated Plaintiffs to file this lawsuit. The Counterclaim should be dismissed for this second and independent reason.

To demonstrate that a party acted with "an ulterior purpose," a party must allege facts sufficient to show that a lawsuit was filed as a "form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself." *Hanier*, 492 S.E.2d at 107. This is a high bar to clear because the allegations must demonstrate that the improper purpose is the "sole or paramount reason for acting." *S. Glass & Plastics Co.*, 626 S.E.2d at 24. By contrast, when a lawsuit is filed for the "purpose of remedying alleged wrongs," a court must dismiss an abuse of process claim. *Food Lion*, 567 S.E.2d at 256; *see also Smith v. Pepsi Bottling Co.*, No. 06-0040, 2007 WL 2572241, at *12 (D.S.C. Aug. 31, 2007) (dismissing abuse-of-process counterclaim when "there is no evidence that Plaintiff is using the suit for other than its stated purpose, i.e. to seek redress"); *Thompson v. Paul*, 402 F. Supp. 2d 1110, 1116 (D. Ariz. 2005) (allegation that lawsuit was filed to "exhaust [party's] financial resources," without more, could not support abuse-of-process claim), *rev'd on other grounds by* 547 F.3d 1055 (9th Cir. 2008).

Pan American has failed to satisfy this demanding standard. A counterclaim can only survive a motion to dismiss if it includes detailed allegations specifying the improper purpose. *Cf. Darby v. Williamsburg County School Dist.*, No. 09-2682, 2010 WL 1491950, at *2 (D.S.C. Apr. 8, 2010) (allegation that lawsuit was initiated to obtain personal information through discovery for specific political purposes sufficient to state abuse-of-process

counterclaim). Here, by contrast, Pan American's Counterclaim contains only "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements" about Plaintiffs' motives for bringing this lawsuit, which cannot state a claim for relief. *Iqbal*, 129 S. Ct. at 1949. For example, Pan American alleges that it "has been singled out for an improper purpose," but it does not specify what that "improper purpose" is. (Ans. & Countercl., ¶ 48.) Similarly, Pan American alleges that Plaintiffs' lawsuit is motivated by "an ulterior motive," but it does not specify what that "ulterior motive" is. (*Id.*) Such conclusory allegations mean that Pan American's claim "lacks the 'facial plausibility' required by *Iqbal* and should be dismissed." *Stoudemire v. Branch Banking & Trust Bankcard Corp.*, No. 09-2485, 2010 WL 3447325, at *3 (D.S.C. Aug. 2, 2010) (dismissing abuse-of-process counterclaim that simply alleged that plaintiff acted in "bad faith" and filed lawsuit "for an ulterior purpose").

Because Pan American does not allege facts suggesting that some "ulterior purpose" other than remedying race discrimination was Plaintiffs' "sole or paramount reason for acting," this Court should dismiss the Counterclaim. *S. Glass & Plastics Co.*, 626 S.E.2d at 24.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Counterclaim for failure to state a claim.

DATED: August 4, 2011.                          Respectfully submitted,

                                                /s/ D. Peters Wilborn, Jr.
                                                D. Peters Wilborn, Jr., Federal ID #7609
                                                DERFNER, ALTMAN & WILBORN, L.L.C.
                                                575 King Street
                                                P.O. Box 600
                                                Charleston, SC 29402
                                                Tel: (843) 723-9804
                                                Fax: (843) 723-7446

*Intend to file motions to appear pro hac vice:*
Donald J. Ridings, Jr.
Henry Liu
Andrew Soukup
Jihad Beauchman
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004-2401
Tel.: (202) 662-6000
Fax: (202) 778-6000

*Attorneys for Plaintiffs*

*Of counsel:*
Emily Read
Richard Ritter
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
Tel.: (202) 319-1000
Fax:  (202) 319-1010

*Attorneys for Plaintiffs*